IN THE UNITED STATES BANKRUPTCY
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| SHANNON R. BOOTH, | ) | Case No. 07-30459 |
| | ) | |
| Debtor. | ) | In Proceedings Under |
| | ) | Chapter 13 |

AGREED ORDER

COMES NOW the Debtor, by her attorneys The Law Offices of Mueller and Haller, LLC and Russell Simon, Chapter 13 Trustee, having resolved objection #4 of the trustee's July 12, 2007 Objection to Confirmation pursuant to the Settlement Agreement attached hereto:

IT IS HEREBY ORDERED AS FOLLOWS:

1. That the Settlement Agreement attached hereto as Exhibit 1 is approved and incorporated into this order.

2. Debtor shall amend her plan within 45 days of the entry of this order to comply with said settlement agreement.

Counsel for the moving party shall serve a copy of this Order by mail to all interested parties who were not served electronically.

ENTERED: March 4, 2008          /s/ James K. Coachys
                                UNITED STATES BANKRUPTCY JUDGE


/S/ Russell Simon               /s/ James J. Haller
Chapter 13 Trustee              Attorney for Debtor

# EXHIBIT 1

SETTLEMENT AGREEMENT
IN RE BOOTH, BK. NO. 07-30459
(Watters issue)

This Settlement Agreement ("Agreement") is made as of February 27, 2008, by and between Shannon R. Booth, (hereinafter Debtor), and the Chapter 13 Trustee, Russell Simon (hereinafter Trustee).

## RECITALS

This Agreement is made with respect to the following facts:

A.      Debtor's Schedule B lists a claim against her ex-husband in the amount of $15,000.00.

B.      Debtor's plan does not provide that all proceeds from that claim against her ex-husband shall be paid to the Trustee.

C.      The Trustee has objected to the Debtor's plan arguing that pursuant to 11 U.S.C. §1325(b) and the Court ruling in *In re Watters*, 167 B.R. 146 (S.D. Ill. 1994) a debtor must submit to the Trustee all income she may receive from this claim.

D.      The Debtor and Trustee dispute whether the bankruptcy code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, has effectively overruled the decision in *Watters*.

## SCOPE OF AGREEMENT

Included in the terms "cause of action" as used herein, are the following (the settlement funds resulting therefrom hereinafter collectively referred to as the "proceeds"):

        Personal Injury Actions      Workers' Compensation Claims
        Inheritances      Wrongful Death Actions
        Class Actions      Wrongful Discharge/Termination Actions
        Annuities      Life Insurance Proceeds
        Lump sum child support arrearage payments in excess of $1,000.00
        Any proceeds from any other pre or post-petition claims and/or cause(s) of action

## **AGREEMENT**

NOW, THEREFORE, in consideration of the foregoing facts, and the terms and conditions set forth herein, the Parties hereto agree as follows:

1. In this chapter 13 case where the Debtor has, or acquires during the pendency of the case, a cause of action as defined above:

    a. the following provision will be inserted in the funding paragraph of the plan:

    **any proceeds received during the pendency of the case in excess of $17,000.00 <u>or</u> 50% of the net proceeds, whichever amount is lower.**

    b. Simultaneously with the tender of any funds referenced above, the Debtor (or their counsel) shall provide the Trustee with a written expense breakdown, showing the total gross amount of the proceeds and each expense charged against said gross amount.

    c. Line 21 of the Debtor(s) Schedule B (and SOFA No. 4, if applicable) must include a reference to all such causes of action and shall be amended to reflect any post-petition claims or causes of action. If the Debtor intentionally fail to properly disclose any such causes of action, the Trustee may disregard the provisions of this agreement and may file the appropriate document(s) with the Court seeking the turnover of all of the proceeds and/or a denial of the Debtor's discharge.

2. If the Debtor is represented by an attorney to prosecute the cause of action, the Debtor shall direct said attorney to pay the excess proceeds and provide the expense breakdown (as set forth in Paragraph 1 above) directly to the Trustee within 10 days of receipt of same. If the Debtor is acting in a pro-se capacity, the Debtor shall pay the excess proceeds to the Trustee within 10 days of receipt of same and simultaneously provide the Trustee with a copy of the original settlement check(s). All such payments, whether by an attorney or the Debtor, must be made payable to "Russell C. Simon, Trustee" and mailed to Chapter 13 Trustee, P.O. Box 1898, Memphis, Tennessee 38101-1898. These payments shall reference the Debtor's name and Chapter 13 case number and must be in the form of a cashier's check, money order, or issued from an attorney's trust account.

3. The proceeds tendered to the Trustee under this agreement shall be paid to creditors in the Chapter 13 case in the order of distribution set forth in the plan. Any funds distributed to allowed non-priority unsecured creditors shall occur under the terms of the plan as if no such proceeds had been received by the Trustee. Absent a Court Order to the contrary, no funds shall be disbursed to allowed non-priority unsecured creditors until all

       allowed secured, priority and administrative claims are paid in full according to the plan.

4. It is expressly understood and agreed that all such proceeds tendered to the Trustee shall be in addition to the Debtor's regular monthly payments as set forth in their then current Chapter 13 Plan. Absent a showing of extraordinary circumstances, the Debtor is prohibited from utilizing such proceeds to bring their case current.

5. The minimum required pool to be paid to all allowed unsecured creditors after the receipt of the excess proceeds (as defined in Paragraph 1a) shall be the higher of either:

    a. An amount necessary to satisfy the "liquidation test" as determined at confirmation pursuant to §§ 541, 1306 and 1325(a)(4) and the amount of the excess proceeds tendered to the Trustee that are not otherwise exempt; or

    b. An amount necessary to satisfy the "best efforts test" as determined at confirmation pursuant to §1325(b) and the total amount of the excess proceeds tendered to the Trustee.

6. Upon the receipt of any proceeds under this agreement, the Trustee is expressly authorized, without further need to modify the Debtor's plan, to make internal computer adjustments to cause the pool for allowed unsecured creditors to be increased by the amount of such remaining proceeds to be distributed under the plan per Section 5 above.

7. Debtor may amend her plan (subject to any objection) to reduce the minimum pool to allowed unsecured creditors under the amount calculated under Section 5(b) above if the amended plan meets the requirements of 11 U.S.C. § 1329. Debtor must demonstrate, at a minimum, a substantial need to reduce the pool notwithstanding the receipt of proceeds under Paragraph 1 above. However, under any circumstance, Debtor may not amend her plan to reduce the plan base below the minimum amount calculated under Section 5(a) above.

~~8.~~ In the event that the Debtor fails to pay such proceeds to the Trustee as provided herein and/or if their case is subsequently dismissed for any reason after the Trustee's receipt of such proceeds, the Trustee shall have the right to request a determination by the Court of whether the debtor's case should be dismissed with prejudice or with a bar to refiling.

9. Within sixty (60) days of any written request by the Trustee, the Debtor shall be required to provide the Trustee with a report on the status of the

      pending cause of action.  Failure to respond shall constitute grounds for the Trustee to take that action which may be deemed necessary.


/S/ Russell Simon                        /s/ James J. Haller
Chapter 13 Trustee                   Attorney for Debtor